**CLERK'S OFFICE**
**A TRUE COPY**
**May 22, 2020**
**s/ Daryl Olszewski**

**Deputy Clerk, U.S. District Court**
**Eastern District of Wisconsin**

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* ) | Case No.   20   MJ   140 |
| CELL PHONE DEVICES A THROUGH I AS FURTHER DESCRIBED IN ATTACHMENT A ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

    I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the    Eastern    District of     Wisconsin     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

    The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

    The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 USC Sections 841(a)(1), 843(b) and 846 and 18 USC Section 924(c) | Possession with intent to distribute narcotics, conspiracy to distribute narcotics, and possession of a firearm in furtherance of drug trafficking |

    The application is based on these facts:

See attached affidavit

    ☐ Continued on the attached sheet.

    ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David Kowalski, Special Agent - FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
       telephone        *(specify reliable electronic means)*.

Date:    May 22, 2020

*Judge's signature*

City and state:    Milwaukee, WI      Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, David Kowalski, being first duly sworn, hereby depose and state as follows:

## I.  INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE

1.     I am a Special Agent with the Federal Bureau of Investigation and have been so employed since April 2009. Since August 2018, I have been assigned to the Milwaukee FBI Violent Crime Task Force. I have participated in numerous complex narcotics, money laundering, violent crime, armed bank robbery, and armed commercial robbery investigations in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 924(c), 1951, 1956, 1957, 2113, and other related offenses. I have employed a wide variety of investigative techniques in these and other investigations, including but not limited to, the use of informants, wiretaps, cooperating defendants, recorded communications, search warrants, surveillance, interrogations, public records, DNA collection, and traffic stops. I have also received formal training regarding the same.

2.     I have conducted and/or assisted with investigations of violent crime and narcotics violations in conjunction with agents and officers from other jurisdictions and have received training from these agents and officers in conducting these investigations. I have also conducted and/or assisted with investigations that have led to the arrest of persons for violations of law dealing with commercial robberies and carjackings.

3.     This affidavit is based upon my personal knowledge, my training and experience, and on information reported to me by other federal, state, and local law

1

enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, official records, citizen witnesses' statements, consent searches, recorded statements, law enforcement surveillance, surveillance video, social media, court records, telephone records, and/or public records which I consider to be reliable as set forth herein. The facts of this Affidavit are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers.

4.     Based on the investigation to date, I submit there is probable cause to believe that on April 20, 2020, in Milwaukee, Wisconsin, which is located in the Eastern District of Wisconsin, Timothy Jiles, Jr. (DOB XX/XX/1988), Kendrice A. McMillian (DOB XX/XX/2000), and Fahvian P. Ellis (DOB XX/XX/2002) conspired to possess marijuana with the intent to distribute the same, while also possessing a firearm, in violation of Title 21, United States Code, Sections 841(a)(1) – (possession with intent to distribute a controlled substance), and Title 18, United States Code, Sections 924(c)(1)(A) – (use or carry of a firearm, or possesses a firearm, in furtherance of a drug trafficking crime).

5.     This affidavit is submitted in support of an application for a search warrant for the following portable electronic devices ("Devices"), which were recovered and entered into the evidence system of the Milwaukee Police Department ("MPD") and are currently being maintained at the Milwaukee Field Office of the Federal Bureau of Investigation ("FBI"), for evidence of the users' possible involvement in drug trafficking and/or possession/ownership of a firearm in furtherance of said drug trafficking, as well as carjacking and/or the interstate transportation of stolen property. The "Devices" are

2

more fully described below:

    a.  A silver iPhone XS, model number: A1920, IMEI number: 356174091570617, in an opaque plastic case, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #1.

    b.  A black US Cellular LG flip-style cellphone, model number: UN530, serial number: 501CYZP0127077, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #2.

    c.  A black and silver Sprint Kyocera cellphone, model number: E4233, DEC #: 268435459912230630, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #3.

    d.  A black U.S. Cellular Kyocera flip-style cellphone, model number: E4510, IMEI number: 99000610938461, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #4.

    e.  A dark grey LG flip-style cellphone, model number: UN540, serial number: 609CQBD0016309, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #5.

    f.  A dark grey Apple iPhone 11 Pro, model number: A2160, IMEI number: 353249103090581, in a clear plastic case, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #6.

    g.  A red Apple iPhone 8 Plus, IMEI 356110095198328, in a green and blue camouflaged case, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #7.

3

h. A black US Cellular LG flip-style cellphone, model number: UN530, serial number: 309CYQX0000164, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #8.

i. A black and red Verizon Kyocera flip-style cellphone, model number: E4520PTT, MEID: 99000612038285, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #9.

6. Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included every fact known to me concerning this investigation. I have attempted to set forth only the facts I believe are pertinent to establishing the necessary foundation for the warrant.

## II. PROBABLE CAUSE

7. On March 7, 2020, H.V., who had posted his car, a black 2011 BMW 550i VIN: WBAFU9C55BC785432, for sale on Craigslist, met with two black males in Gurnee, Illinois, after one of those individuals had expressed interest in purchasing the vehicle. The two black males, who had arrived in a red Jeep Wrangler, told H.V. they wanted to take the vehicle for a test drive before purchasing it. H.V. agreed and got into the front passenger seat of his vehicle, while one of the subjects entered the driver seat and the other sat behind H.V., in the rear passenger seat. After driving for a short while, the black males produced handguns and instructed the driver to pull over. They then directed H.V. to give them his cellular telephone and watch, and exit the vehicle. H.V. complied, and the black males drove away in his vehicle.

4

8.    On March 20, 2020, MPD officers were on patrol and observed a black 2011 BMW sedan with no license plate on the rear of the vehicle and tinted windows that were believed to be in violation of Wisconsin state law, travelling north on N. 55th Street, approaching W. Congress Street, in Milwaukee, Wisconsin. The officers activated their emergency lights and attempted to conduct a traffic stop. At that time, the BMW fled the area at a high rate of speed. After several miles, officers observed the driver and a rear occupant exit the vehicle and continue to flee on foot. The driver, Timothy Jiles, Jr. (Jiles), was apprehended a short while later, as was the rear occupant, Fahvian P. Ellis (Ellis). Officers also arrested Kendrice A. McMillian (McMillian), the front passenger, who had remained at the vehicle when it came to a stop.

9.    Upon checking the BMW's VIN, law enforcement learned it was the same vehicle taken at gunpoint from H.V. on March 7, 2020. Inside the vehicle, law enforcement recovered the following:

   a.  A large, clear plastic bag containing suspected marijuana which field tested positive for THC with a weight of 441.64 grams, which was found on the rear passenger floorboard;

   b.  A camouflage backpack, found on the rear passenger seat, containing a black and silver digital scale, and 27 zip-lock multicolored bags containing suspected marijuana, which field tested positive for THC with a combined weight of 165.04 grams;

   c.  A black over tan Glock 23 Gen 4, .40 caliber semi-auto handgun with extended magazine with 16 unfired cartridges loaded into the magazine,

5

and one unfired cartridge in the chamber of the weapon, which was found on the rear passenger floorboard;

d. A black over tan FN Herstal 5.27x 28 semi-automatic handgun with 26 unfired cartridges loaded into the magazine, and one unfired cartridge in the chamber of the weapon, which was found on the front passenger floorboard;

e. A black digital scale, which was found in the driver's door;

f. A silver iPhone XS, model number: A1920, IMEI number: 356174091570617, in an opaque plastic case, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #1, which was found on the front passenger seat;

g. A black US Cellular LG flip-style cellphone, model number: UN530, serial number: 501CYZP0127077, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #2, which was found on the driver's seat;

h. A black and silver Sprint Kyocera cellphone, model number: E4233, DEC #: 268435459912230630, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #3, which was found under the rear passenger seat center arm rest;

i. A black U.S. Cellular Kyocera flip-style cellphone, model number: E4510, IMEI number: 99000610938461, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #4, which was found

6

under the rear passenger seat center arm rest;

j.  A dark grey LG flip-style cellphone, model number: UN540, serial number: 609CQBD0016309, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #5, which was found on the rear passenger seat center arm rest;

10.  Following Jiles's arrest, law enforcement officers conducted a search of his person. During that search officers located the following:

a.  A dark grey Apple iPhone 11 Pro, model number: A2160, IMEI number: 353249103090581, in a clear plastic case, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #6.

b.  $2,933 in the following denominations:

   i.  2x$50;

   ii.  130x $20;

   iii.  12x $10;

   iv.  22x $5;

   v.  3x $1.

11.  Following Ellis's arrest, law enforcement officers conducted a search of his person. During that search officers located the following:

a.  A red Apple iPhone 8 Plus, IMEI 356110095198328, in a green and blue camouflaged case, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #7.

b.  A black US Cellular LG flip-style cellphone, model number: UN530, serial

7

number: 309CYQX0000164, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #8.

c. A black and red Verizon Kyocera flip-style cellphone, model number: E4520PTT, MEID: 99000612038285, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #9.

12. Based on my training, experience, and participation in this and other investigations, and through the experience of other agents and officers familiar with narcotics trafficking cases, I know:

a. That narcotics traffickers frequently purchase large quantities of controlled substances, which they then repackage into small, user-level quantities, for the purpose of selling those smaller packages for a profit;

b. That narcotics traffickers frequently use digital scales to weigh controlled substances for the purpose of ensuring they have received the correct quantity of the substance from their supplier and to ensure that they are packaging their user-level quantities appropriately to maximize profit;

c. That narcotics dealers often utilize one or more cellular telephones to arrange for the purchase and/or sale of controlled substances, to store the names, numbers and contact information of other narcotics contacts, specifically: dealers, suppliers, couriers, recipients, and co-conspirators, and to communicate with these same individuals;

d. That cellular telephones are tools of the narcotics trade, in that the data stored on cellular telephones used or possessed by narcotics dealers is

8

likely to reveal prior incoming/outgoing calls and messages to/from narcotics contacts, the names and telephone numbers of narcotics contacts, photographs of narcotics, contraband, narcotics locations or activity, photographs of those involved in narcotics trafficking activities, date, time, and location of associated phone activity, and applications and their associated data used to store, hide, transmit, erase, create or otherwise manipulate communications and data relevant to narcotics trafficking;

e. That narcotics dealers often utilize cellular telephones and associated digital storage media, to generate, transfer, count, record, and/or store the information or items related to their narcotics business;

f. That data stored on electronic devices can often be recovered through forensic digital examination, even after it has been deleted by a user of the device;

g. That the trafficking of controlled substances, generates large quantities of U.S. currency in small denominations;

h. That narcotics traffickers commonly have in their possession, that is, on their person or in their vehicles, firearms, which are used to protect and secure their controlled substances and U.S. currency;

i. That data stored on electronic devices such as cellular telephones and associated digital storage media used or possessed by narcotics traffickers is likely to reveal the ownership, purchase, and use of firearms in the possession of those traffickers through incoming/outgoing calls and

9

messages to/from firearms dealer contacts, photographs of firearms,
and/or photographs of those involved in the purchase or use of the
firearms for the purpose of narcotics trafficking.

13.     The Devices described above, Items #1-9, are currently in the lawful
possession of the FBI as they were seized incident to the arrest of the occupants of the
stolen BMW described above. Therefore, while the FBI might already have all
necessary authority to examine the Devices, I seek this additional warrant out of an
abundance of caution to be certain that an examination of the Devices will comply
with the Fourth Amendment and other applicable laws.

14.     Based on my training and experience, I know that the Devices have been
stored in a manner in which its contents are, to the extent material to this
investigation, in substantially the same state as they were when the Devices first came
into the possession of the FBI.

### III.     TECHNICAL TERMS

15.     Based on my training and experience, I use the following technical terms
to convey the following meanings:

> a.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular
> telephone) is a handheld wireless device used for voice and data
> communication through radio signals. These telephones send signals
> through networks of transmitter/receivers, enabling communication with
> other wireless telephones or traditional "land line" telephones. A wireless
> telephone usually contains a "call log," which records the telephone

10

number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can

11

also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

12

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

16. Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that the electronic Devices described above have capabilities that allow them to serve as a wireless

13

telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**IV.  ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

17.    Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the Devices. This information can sometimes be recovered with forensics tools.

18.    *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

      a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.  Forensic evidence on a device can also indicate who has used or controlled

14

the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19.  *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20.  *Manner of execution*. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable

15

cause for the Court to authorize execution of the warrant at any time in the day or night.

**V.     CONCLUSION**

21.     Based on the facts contained within this affidavit, I believe that probable cause exists to search the Devices, which are more particularly described in Attachment A, and which are currently located at the FBI's Milwaukee Field Office, for evidence of the aforementioned crimes, including but not limited to the information contained in Attachment B.

16

## ATTACHMENT A

The following Devices are to be searched:

a. A silver iPhone XS, model number: A1920, IMEI number: 356174091570617, in an opaque plastic case, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #1.

b. A black US Cellular LG flip-style cellphone, model number: UN530, serial number: 501CYZP0127077, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #2.

c. A black and silver Sprint Kyocera cellphone, model number: E4233, DEC #: 268435459912230630, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #3.

d. A black U.S. Cellular Kyocera flip-style cellphone, model number: E4510, IMEI number: 99000610938461, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #4.

e. A dark grey LG flip-style cellphone, model number: UN540, serial number: 609CQBD0016309, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #5.

f. A dark grey Apple iPhone 11 Pro, model number: A2160, IMEI number: 353249103090581, in a clear plastic case, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #6.

g. A red Apple iPhone 8 Plus, IMEI 356110095198328, in a green and blue camouflaged case, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #7.

h. A black US Cellular LG flip-style cellphone, model number: UN530, serial

number: 309CYQX0000164, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #8.

i. A black and red Verizon Kyocera flip-style cellphone, model number: E4520PTT, MEID: 99000612038285, currently in the possession of the FBI and listed in MPD evidence as Inventory #: 20013558, Item #9.

The Devices are currently located at the FBI's Milwaukee Field Office.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

2

## ATTACHMENT B

1.     All records on the Device described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 924(c), 1951, 1956, 1957, 2113, and other related offenses involving Timothy Jiles, Jr. (DOB XX/XX/1988), Kendrice A. McMillian (DOB XX/XX/2000), and Fahvian P. Ellis, or any other subject, which was in active memory of the Devices, to include:

       a.  any information related to possession of controlled substances, firearms, or ammunition (including photographs, text messages, emails, or any other communication information);

       b.  lists of customers and related identifying information;

       c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

       d.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

       e.  any information recording any targets' schedule or travel;

       f.  any web search information related to the offenses described above, including the carjacking, possession of stolen property, narcotics trafficking, and/or possession of a firearm in furtherance of narcotics trafficking;

       g.  photographs of locations, vehicles, or people related to the offenses described above, including the carjacking, possession of stolen property,

narcotics trafficking, and/or possession of a firearm in furtherance of narcotics trafficking;

h. any location information from the device related to the offenses described above, including the carjacking, possession of stolen property, narcotics trafficking, and/or possession of a firearm in furtherance of narcotics trafficking;

i. any communications via text messages, email, Facebook, Twitter, or other web-based applications or websites between the subjects and others regarding the offenses described above, including the carjacking, possession of stolen property, narcotics trafficking, and/or possession of a firearm in furtherance of narcotics trafficking; and

j. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence,

2

fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

3

2